AF Approval _____          Chief Approval _____

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 8:20-cr-119-CEH-TGW

JAMES LEE CLARK


### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Karin Hoppmann, Acting United States Attorney for the Middle District of Florida, and the defendant, James Lee Clark, and the attorney for the defendant, Bjorn E. Brunvand, mutually agree as follows:

**A.   Particularized Terms**

1.   Counts Pleading To

The defendant shall enter a plea of guilty to Counts Seventeen and One of the Indictment. Count Seventeen charges the defendant with wire fraud, in violation of 18 U.S.C. § 1343. Count One charges the defendant with conspiracy to commit bankruptcy fraud, in violation of 18 U.S.C. § 371.

2.   Maximum Penalties

Count Seventeen carries a maximum sentence of 20 years of imprisonment, a fine of $250,000, a term of supervised release of not more than three years, and a special assessment of $100. Count One carries a maximum sentence of five years of imprisonment, a fine of $250,000, a term of supervised release of not

Defendant's Initials _____

more than three years, and a special assessment of $100. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.    Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty. The elements of Count Seventeen are:

| | |
|---|---|
| First: | the defendant knowingly devised or participated in a scheme to defraud, or to obtain money or property by using false pretenses, representations, or promises; |
| Second: | the false pretenses, representations, or promises were about a material fact; |
| Third: | the defendant acted with the intent to defraud; and |
| Fourth: | the defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud. |

The elements of Count One are:

| | |
|---|---|
| First: | two or more persons in some way agreed to try to accomplish a shared and unlawful plan; |
| Second: | the defendant knew the unlawful purpose of the plan and willfully joined in it; |
| Third: | during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the Indictment; and |

Defendant's Initials _____

2

Fourth:     the overt act was committed at or about the time alleged
            and with the purpose of carrying out or accomplishing
            some object of the conspiracy.

4.    Counts Dismissed

At the time of sentencing, the remaining count(s) against the defendant,

Counts Two through Sixteen, will be dismissed pursuant to Fed. R. Crim. P.

11(c)(1)(A).

5.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's

Office for the Middle District of Florida agrees not to charge defendant with

committing any other federal criminal offenses known to the United States

Attorney's Office at the time of the execution of this agreement, related to the

conduct giving rise to this plea agreement.

6.    Mandatory Restitution to Victims of Offenses of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full

restitution to the following victims in at least the amounts reflected in this table:

| Count | Victim | Loss Amount |
|---|---|---|
| Seventeen | E.J. | $25,000.00 |
| One | Federal National Mortgage Association | $4,216.05 |
| One | Nationstar Mortgage | $5,203.60 |
| One | U.S. Bank | $8,438.25 |
| One | Bank of America | $6,329.84 |
| | Total | $49,187.74 |

Defendant's Initials           3

7.   Discretionary Restitution to Victims of Offense of Conviction

Pursuant to 18 U.S.C. § 3663(a) and (b), defendant agrees to make full restitution to the following victims in at least the amounts reflected in this table:

| Victim | Additional Loss Amount |
|---|---|
| P.G. | $946,764.00 |
| E.J. | $347,985.89 |
| J.G. | $150,000.00 |
| Total | $1,444,749.89 |

8.   Guidelines Sentence—Joint Recommendation

Pursuant to the Fed. R. Crim. P. 11(c)(1)(B), the United States and the defendant agree to jointly recommend to the Court that the defendant be sentenced within the defendant's applicable guideline range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a joint recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

9.   Chapter Two Offense Level—Joint Recommendation

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States and the defendant agree to jointly recommend to the Court that the defendant's Chapter Two offense level be calculated, as set forth below, at 22 pursuant to USSG §2B1.1. The

Defendant's Initials           4

parties understand that such a joint recommendation is not binding on the Court, and if not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

| Guideline | Description | Levels |
|---|---|---|
| USSG §2B1.1(a)(1) | Base Offense | 7 |
| USSG §2B1.1(b)(1)(H) | Loss Amount | +14 |
| USSG §2B1.1(b)(2)(A) | Victims | +2 |
| USSG §3B1.1(c) | Role in Offense | +2 |
| USSG §3E1.1(b) | Acceptance of Responsibility | -3 |
| Chapter 3 Part D | Groups of Closely Related Counts Provisions Considered | 0 |
| **Total Adjusted Offense Level** | | 22 |

The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

7.    Acceptance of Responsibility—Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG

Defendant's Initials                     5

§3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8. <u>Low End</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Defendant's Initials  6

9.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(2), whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the $25,000.00 in proceeds the defendant admits he obtained as the result of the commission of the offense set forth in Count Seventeen to which the defendant is pleading guilty. The defendant acknowledges and agrees that: (1) the defendant obtained this amount as a result of the commission of the offense(s), and (2) as a result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offense(s) of conviction. The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense(s) and consents to the entry of the forfeiture order into the Treasury Offset Program. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the

Defendant's Initials                     7

exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all

Defendant's Initials                 8

assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of

Defendant's Initials                9

responsibility and substantial assistance and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

**B.**   **Standard Terms and Conditions**

1.   Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to

Defendant's Initials _____   10

the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check or money order to the Clerk of the Court in the amount of $200, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.

The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information,

Defendant's Initials _____              11

including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.   Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the

Defendant's Initials                 12

purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

Defendant's Initials _____      13

7.    <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.    <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials             14

9.     <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.     <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant

Defendant's Initials        15

questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

## FACTS

### Count Seventeen

Defendant James Lee Clark, an attorney licensed to practice law in Florida, operated a law firm called Clark Law Group, PLLC in the Middle District of Florida. As part of Clark's law practice, he cultivated victim-clients who entrusted him with their money for various purposes: (a) to hold clients' money in interest bearing trust accounts ("IOTA"), (b) to place clients' money in trust accounts for specified purposes such as to pay expenses, provide disbursements, or be secured for trust beneficiaries, and (c) to act as trustee for trust accounts and administer said

Defendant's Initials           16

accounts. By purporting to provide these services, Clark gained access to the victim-clients' funds.

Clark maintained and controlled law firm escrow and operating accounts as well as revocable trust and irrevocable trust accounts at JP Morgan Chase Bank, including, but not limited to: (1) Clark Law Group Interest on Trust Account ("IOTA") ending in xx1419, and (2) Clark Law Group operating account ending in xx1079.

From in or around January 2012, through in or around February 2017, Clark committed wire fraud. Specifically, Clark caused law firm clients, including victim-client E.J., to transfer money to Clark to be placed in accounts, including IOTA and other trust accounts, by means of false and fraudulent representations, including, but not limited to, that (1) clients' money would be secured in trust accounts; (2) beneficiaries of the trust accounts would receive disbursements of money in accordance with the intent and purpose of the trusts; and (3) money held in trust accounts would be used to pay tax liabilities and be available to beneficiaries for other purposes. After victim-clients, including victim E.J., had transferred funds to Clark, he diverted money from the IOTA and trust accounts, without his clients' knowledge or authorization, and transferred the funds into other accounts he controlled for his own personal enrichment. After diverting the victim-clients' funds, Clark provided E.J. and other victim-clients with false and fraudulent explanations as to why he could not disburse money from their trust accounts to them or for their benefit.

Defendant's Initials           17

On May 24, 2016, in connection with this fraud scheme, Clark caused the wire transfer of $25,000.00 of victim-client E.J.'s medical malpractice settlement funds from the Clark Law Group JP Morgan Chase IOTA account ending in xx1419 under his control to the Clark Law Group JP Morgan Chase operating account ending in xx1079 under his control. In so doing, Clark caused data to cross state lines—that is, the data underlying the fraudulent transfer initiated by Clark was sent from a computer server in Tampa, Florida and the data was received by JP Morgan Chase servers located in Wilmington, Delaware. Clark used the funds for his personal enrichment, without victim-client E.J.'s knowledge or consent.

The losses suffered by the victim-clients, including the total loss suffered by victim-client E.J., as a result of Clark's wire fraud scheme amount to at least $1,469,749.89 as set forth below:

| Victim | Monetary Loss |
|--------|---------------|
| P.G. | $946,764.00 |
| E.J. | $372,985.89 |
| J.G. | $150,000.00 |

### Count One

From in or around January 2010, through in or around February 2017, Clark and his para-professional employee and co-conspirator, Eric Liebman, conspired to commit bankruptcy fraud, that is, they agreed to defraud creditors holding mortgage notes, as well as the Federal National Mortgage Association ("Fannie Mae") which was guaranteeing mortgage notes, by preparing and filing false and fraudulent

Defendant's Initials           18

bankruptcy petitions under Title 11 of the United States Code. They did so to prevent the mortgage creditors from lawfully foreclosing on real properties, to conceal their scheme to defraud, and for their own personal enrichment.

Clark solicited distressed homeowners, received referrals from other attorneys associated with the distressed homeowners, or contacted distressed homeowners offering to provide foreclosure rescue program services to save their homes from foreclosure. Clark represented these distressed homeowners in state foreclosure actions filed by mortgage creditors.

Clark and co-conspirator Liebman fraudulently represented to the distressed homeowners that in exchange for executing quitclaim or warranty deeds for their properties to Liebman's entity, Florida Recovery Property Solutions, LLC ("FRPS"), as trustee under a Florida Land Trust, they would negotiate with the mortgage creditors to obtain the mortgage notes for their homes or renegotiate the mortgage notes with the creditors and prevent foreclosure. Clark and co-conspirator Liebman subsequently recorded or caused to be recorded the quitclaim or warranty deeds executed in favor of FRPS.

In contrast to these representations and promises, Clark generally did not make any effort to negotiate with the mortgage creditors to save the distressed homeowners from foreclosure or to renegotiate the mortgage notes. In fact, he often abandoned his representation of the distressed homeowners in the mortgage creditors' state court foreclosure actions, resulting in largely unopposed

Defendant's Initials                     19

continuations of foreclosure proceedings by the mortgage creditors to obtain final judgments of foreclosure.

What Clark did do was prevent creditors from lawfully foreclosing on the distressed homeowners' properties by preparing or causing to be prepared, and filing or causing to be filed, fraudulent bankruptcy petitions in the names of the distressed homeowners or third-party lessees of the subject homes. The purpose of these bankruptcy petitions was to invoke the automatic stay provision of the federal bankruptcy law to halt the foreclosure proceedings in order to allow Clark and co-conspirator Liebman time to collect ill-gotten rental income and/or legal fees associated with the preparation and filing of the petitions.

After filing fraudulent bankruptcy petitions, Clark prepared and filed Suggestions of Bankruptcy with the Clerk of Court, Hillsborough County, Florida, or the Clerk of Court, Pasco County, Florida in order to further stall the lawful foreclosure proceedings. Clark and co-conspirator Liebman had no intention of pursuing these sham bankruptcy petitions, which ultimately were dismissed for deficient filings or failure to attend mandatory hearings. In some instances, Clark even prepared and filed subsequent fraudulent bankruptcy petitions in the distressed homeowners' or third-party lessees' names to further forestall lawful foreclosures and evictions in order to keep collecting ill-gotten rent from the properties and/or legal fees.

One example of Clark's participation in the bankruptcy fraud conspiracy involved a property located at 6841 Marylou Lane, Wesley Chapel, Florida. On

Defendant's Initials                 20

November 2, 2011, Clark filed Defendant's Motion to Participate in Circuit Civil Mediation as attorney of record for distressed homeowners J.C. and T.C. in a state foreclosure action filed by creditor GMAC Mortgage and guaranteed by Fannie Mae, Case No. 2010-CA-000736, in the Circuit Court of the Sixth Judicial Circuit in and for Pasco County, Florida. On or about June 29, 2013, co-conspirator Liebman caused J.C. to execute a Warranty Deed in favor of FRPS as Trustee for the Mary Lou Lane Land Trust Numbered 00102. In July 2013, co-conspirator Liebman solicited S.B. and K.B. to purchase the property located at 6841 Marylou Lane, Wesley Chapel, Florida and S.B. to execute a Real Estate Contract for Purchase and Sale for the property. Subsequently, co-conspirator Liebman caused T.C. to execute a Warranty Deed in favor of FRPS as Trustee for the Mary Lou Lane Land Trust Numbered 00102.

On May 26, 2015, Clark prepared and filed a bankruptcy petition in the name of K.B. (Case No. 8:15-05421) with the United States Bankruptcy Court for the Middle District of Florida, Tampa Division to prevent GMAC Mortgage/Fannie Mae from lawfully foreclosing on the property located at 6841 Marylou Lane, Wesley Chapel, Florida. Clark acted to stall the foreclosure so he and co-conspirator Liebman could collect proceeds from the sale of the residence from S.B. and K.B.

The total amount of loss suffered by each victim of the conspiracy to commit bankruptcy fraud is at least $24,187.84, as set forth below:

Defendant's Initials           21

| Victim Creditor | Monetary Loss |
|---|---|
| Fannie Mae | $4,216.05 |
| Nationstar Mortgage | $5,203.60 |
| U.S. Bank | $8,438.35 |
| Bank of America | $6,329.84 |
| Total | $24,187.84 |

12.   <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.   <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___5___ day of ___November___ 2021.

KARIN HOPPMANN
Acting United States Attorney

James Lee Clark
Defendant

Christopher Poor
Special Assistant United States Attorney

Bjorn E. Brunvand
Attorney for Defendant

Jay Trezevant
Assistant United States Attorney
Chief, Economic Crimes Section